## Case No. 8,991.

### In re MALLORY.

[1 Sawy. 88;[1] 6 N. B. R. 22.]

District Court, D. Nevada. April 10, 1871.

BANKRUPTCY — JUDGMENT IN STATE COURT — INJUNCTION TO SHERIFF—UNLAWFUL PREFERENCE—HOW LIQUIDATED.

1. The district courts of the United States, sitting in bankruptcy, have power to restrain, by injunction, the sheriff of a state court from proceeding to sell the property of a voluntary bankrupt, under an execution issued out of a state court upon a judgment obtained before the commencement of proceedings in bankruptcy.

[Cited in Re Brinkman, Case No. 1,884; Re Ulrich, Id. 14,328; Re Hufnagel, Id. 6,837.]

2. It has also the power to declare the lien of a judgment of a state court void, as against the general creditors, if such lien is an unlawful preference under the bankrupt act [of 1867 (14 Stat. 517)].

[Cited in Phelps v. Sellick, Case No. 11,079; Catlin v. Hoffman, Id. 2,521.]

3. The lien of a judgment, like other liens, is to be ascertained and liquidated in the bankruptcy court.

4. Section 1 of the bankrupt act of 1867 construed.

Motion to dissolve injunction restraining the sheriff from selling property of the bankrupt [E. Mallory], under judgment obtained in the state court, before the institution of proceedings in bankruptcy.

[This case was previously heard upon petition of creditors asking for the removal of R. V. Dey, assignee. The prayer of the petition was granted. Case No. 8,990.]

R. M. Clarke, for the motion.

R. S. Mesick, for respondent.

HILLYER, District Judge. On the twenty-third day of October, A. D., 1869, Henry Vansickle obtained a judgment, by confession, against the bankrupt, in the state district court for the county of Douglas. Execution was issued thereon, levied on certain property of the bankrupt, and the sheriff of Douglas county had advertised the property for sale, when, on the fifth day of February,

[1] [Reported by L. S. B. Sawyer, Esq., and here reprinted by permission.]

A. D., 1870, Mallory was adjudged a bankrupt in this court, on his own petition. On the same day the bankrupt petitioned this court for an injunction restraining the said sheriff from selling the property levied on, which was granted.

Vansickle now files a petition praying that the injunction may be dissolved. Mallory's assignee answers, alleging that the judgment is not a valid lien, was procured in fraud of the bankrupt act, and prays that the same be declared to be no lien upon the property, and that the property be ordered to be sold by the assignee free from any lien of the said judgment. As a matter of practice, it may be stated that it was unnecessary to file a petition in this case. A motion to dissolve the injunction would have been the correct way of proceeding.

The main question argued was as to the power of this court, sitting in bankruptcy, to enjoin the sheriff of a state court or parties litigant therein, from proceeding to sell property levied upon by virtue of a writ of execution issued out of the state court, upon a judgment obtained therein before the proceedings in bankruptcy were commenced, with the understanding that the injunction should remain in force if the court should be of opinion that such power existed, leaving the question as to the validity of the lien of the judgment to be determined hereafter, in some other proceeding.

The question is one of the utmost importance, involving the propriety of the exercise of a power by a federal court, the effect of which is to restrain proceedings in a state court, and I feel that its decision imposes upon this court a great responsibility.

In September last, this same question was brought before me in the Case of Lady Bryan Min. Co. [Case No. 7,980], and a motion to dissolve the injunction was denied; but as in that case there was no question raised as to the validity of the judgment liens, and the lien of the judgment creditors was transferred to the proceeds of the property, the point was not so fully argued as it has been now, and I was in this case not only willing, but desirous of hearing further argument from the learned counsel who represent the present parties.

Upon this argument, the sections of the bankrupt act relating in any way to this question, have been read and commented on by counsel, for the purpose of ascertaining the policy and object of the act, and the extent of the power conferred to carry out the policy and effect the object; a great mass of authorities was cited and read on the hearing, and the whole, together with a careful examination on my part of the entire subject, has resulted in more firmly confirming me in the correctness of the opinion expressed in the Lady Bryan Case.

Congress, in the enactment of laws upon the subject of bankruptcies, has complete and plenary power, unrestricted save as to uni-

formity. It has, in legislating upon this subject, power to take from state courts the administration of remedies for the enforcement of liens. The passage by it of a bankrupt law ipso facto abrogates all state insolvent laws. The bankrupt law is then the supreme law of the land, binding alike upon federal and state tribunals, and wherever by express words or by necessary implication it affects state laws, the power of state courts or the remedies of suitors therein, it is paramount.

The jurisdiction of the courts of the United States in matters of bankruptcy is derived from, and its extent must be determined by reference to the language of the bankrupt act; and before those courts restrain parties litigant in, or officers of state courts from prosecuting their remedies therein, or executing the process of those courts, the power to do so ought to be found either in the express language of the act, or it must result as a necessary means for effecting the powers expressly conferred.

Section 1 of the bankrupt act, constitutes the several district courts of the United States courts of bankruptcy, and gives them original jurisdiction in all matters and proceedings in bankruptcy. This jurisdiction is declared to extend: To all cases and controversies arising between the bankrupt and any creditor or creditors who shall claim any debt or demand under the bankruptcy; to the collection of all the assets of the bankrupt; to the ascertainment and liquidation of the liens and other specific claims thereon; to the adjustment of the various priorities and conflicting interests of all parties; to the marshaling and disposition of the different funds and assets; and to all acts, matters, and things to be done under, and in virtue of the bankruptcy, until the final distribution and settlement of the estate of the bankrupt, and the close of the proceedings in bankruptcy.

As reference will be made to the bankrupt act of 1841, I quote that portion of it conferring jurisdiction. It is declared to "extend to all cases and controversies in bankruptcy arising between the bankrupt and any creditor or creditors who shall claim any debt or demand under the bankruptcy; to all cases and controversies between such creditor or creditors, and the assignee of the estate, whether in office or removed; to all cases and controversies between such assignee and the bankrupt, and to all acts, matters and things to be done under, and in virtue of the bankruptcy, until the final distribution and settlement of the estate of the bankrupt, and the close of proceedings in bankruptcy." 5 Stat. 415, § 6. Under this section of the act of 1841, there was much diversity of opinion among courts and lawyers, as to the existence of power to control by injunction upon the parties, the proceedings in state courts. The changes made by the act of 1867, are very noticeable and important. The present law, unlike that of 1841, extends the juris-

diction in plain terms, to the collection of all assets of the bankrupt, the ascertainment and liquidation of liens and other specific claims upon those assets, and to the adjustment of priorities and marshaling of assets so as to secure the rights of all parties, and this jurisdiction is original and exclusive. Now, when congress delegated to the district courts, this equitable jurisdiction in bankruptcy, it must follow, by necessary implication, that it also delegated at the same time the power to administer such remedies known to the law as were absolutely indispensable to the complete exercise of the jurisdiction expressly conferred. One power directly given, is the collection of all the assets. The means by which this result is to be reached are not enumerated, but power to accomplish the result is given, and the right to employ the proper legal process for effecting the result must follow by necessary implication.

The property levied on in this case is part of the assets of the bankrupt. It may be subject to a lien, but the legal title to the property was in the bankrupt when the petition was filed and passed to the assignee. The judgment of Vansickle, if a valid lien by the laws of this state. and not impeachable under the bankrupt law, as a fraud against it, is to be respected and protected by the bankruptcy court. But this statutory lien is neither a right in or to the thing, but is simply a charge thereon.

How now, I ask, could the assets in this case have been collected by the assignee without restraining the sheriff from selling them under his execution? It certainly would complicate the case exceedingly, if the sheriff, after the legal title, by virtue of the bankruptcy, had passed out of Mallory to the assignee, had sold the property as the property of Mallory.

Closely connected with this power of collecting the assets, is that of ascertaining and liquidating the liens, which may be claimed to exist upon those assets.

If the validity of any lien upon the assets of the bankrupt is denied or questioned, in what court is the question to be tried, the validity or invalidity of the lien ascertained, and, if found valid, liquidated? The answer is, that by the express terms of the act, this jurisdiction is given to the bankruptcy court.

Here, as in collecting the assets, a specific result is to be attained, and can it be doubted that the means by which it is to be attained are also given.

The lien is to be ascertained and liquidated in the bankruptcy court, and this would be an idle proceeding if that court has not power to preserve the property, by restraining its sale until the lien is ascertained to be good, or to be void. and of what use is it to say that this court shall liquidate liens, if it cannot restrain parties from liquidating their liens without its intervention. The bankrupt law is highly remedial. and it ought to

have a liberal construction, for the purpose of effecting its aim and policy. The expediency and policy of bringing all the assets into the bankruptcy court, and ascertaining and liquidating there all liens and specific claims thereon, is undeniable.

And while neither the expediency of exercising this power nor the inconvenience of not exercising it, can justify its employment if not found in the statute in direct or necessarily implied terms, these considerations may be, and ought to be looked at in construing the law and arriving at the intention of the law-makers. Let us suppose that two persons each have, or claim to have, a lien by judgment in the state courts, upon the property of the bankrupt at the time of bankruptcy, and that there is a dispute between them as to the priority of their liens or the validity of one of the judgments. One creditor comes into the bankruptcy court, proves his claim and asks to have his lien liquidated. The other proceeds in the state court. If neither court can restrain or control parties before the other, here will be a direct conflict of jurisdiction; decisions as to priorities or validity of the liens may be conflicting, and each court proceeding to take possession of the property through its process and officers, and satisfy the lien of the party before it. Such a state of things would be very much to be deprecated if the bankrupt law were so lame and impotent as to have left the case unprovided for. But the law is not, I conceive, so defective. It gives the bankruptcy court an original and exclusive jurisdiction over all the parties to the bankruptcy proceedings, all the assets and all the liens thereon. Again, a lien may be good by the law of the state and void under the bankrupt law; thus, a lien by attachment is avoided, and the state law creating it is so far abrogated, if the attachment was made within four months next preceding the commencement of proceedings in bankruptcy; so a judgment lien may be void under the bankrupt law, as an unlawful preference to the judgment creditor. Hence, while the judgment might stand in the state court, the lien of that judgment might be avoided in the bankruptcy court; and so it was held under the law of 1841, and that the creditor was liable to refund to the assignee the proceeds of a sale made under the judgment; such creditor having notice of the proceedings in bankruptcy. Shawhan v. Wherritt, 7 How. [48 U. S.] 626.

Let us see now how this question stands upon authority. Where judgment had been obtained in a state court, execution issued and returned unsatisfied, and an order made on proceedings supplementary to execution for the examination of the judgment debtor, Judge Blatchford ordered a stay of all proceedings on the said order until the question of the discharge of the bankrupt should be determined by the bankruptcy court. In re Reed [Case No. 11,637].

In an involuntary proceeding before the same judge, he, under the 40th section of the bankrupt act, enjoined the sheriff of a state court from proceeding to sell property of the alleged bankrupt, and on motion refused to dissolve it until the question whether or not the debtor was to be adjudged a bankrupt was decided. In re Devlin [Case No. 3,841]. The fortieth section of the act gives the district court power by injunction to "restrain the debtor and any other person" from making any transfer or disposition of any part of the debtor's property until the return of the order to show cause why the debtor should not be adjudged a bankrupt. On the hearing it was argued that the express grant of power to enjoin in proceedings in invitum was a denial of any such power in voluntary proceedings upon the maxim expressio unius est exclusio alterius. But it is to be observed that under section 14 it is "in virtue of the adjudication of bankruptcy and the appointment of an assignee" that the property vests in the assignee.

Now, in voluntary cases, the filing of the petition is an act of bankruptcy, and the debtor at the same time surrenders all his estate and effects for the benefit of his creditors and is forthwith adjudged a bankrupt. The district court is thus clothed at once in voluntary cases with jurisdiction over the debtor and his property. But where the proceeding is involuntary the debtor is not adjudged a bankrupt until the return and hearing of the order to show cause, and may not be then if he have a sufficient defense.

There is, therefore, good reason for giving the court power to enjoin between the time of filing the creditor's petition and the return of the order to show cause, as there is in these cases no voluntary surrender of the property and the title cannot vest in the assignee until after adjudication. If the argument of the petitioner is sound the court would have power to enjoin in involuntary cases before adjudication, but must dissolve it immediately after, because the statute in express terms only provides for an injunction until the return of the order to show cause. So that the court might enjoin before it was certain the property of the bankrupt would ever come into its possession, and might not after the property was fully within its jurisdiction.

A bankrupt held under arrest by the sheriff of the city and county of New York, under orders of arrest from the state court, was discharged from arrest and proceedings on actions against the bankrupt in the supreme court of the state were stayed. In re Jacoby [Case No. 7,165].

In a case before Judge Benedict (E. D. New York), where judgment was obtained, execution issued and levied on property of the bankrupt prior to the commencement of proceedings in bankruptcy, that judge enjoined the creditors from enforcing the levy. On motion to dissolve, which was denied, although this question of power was not dis-

MALLORY (Case No. 8,991)                    [16 Fed. Cas. page 552]

cussed, the judge said that the power seemed to be fairly included in the power to collect all the assets, to ascertain and liquidate liens and to adjust priorities. In re Schnepf [Case No. 12,471].

In a voluntary proceeding upon a bill filed to enjoin a sheriff from selling property of the bankrupt under an execution from a state court, Judge Hill, of the Mississippi district, held that the bankrupt himself had a right to file the bill before an assignee was appointed; that if the sheriff had actually levied before the bankruptcy, he would be allowed to proceed without a showing that the sale would be injurious to the general creditors or to some one having a prior lien; that the 20th section, in connection with the 1st and 25th, gave the court jurisdiction of the subject matter; that the commencement of proceedings in bankruptcy transferred to the district court jurisdiction over the bankrupt, his estate, and all parties and questions connected therewith, and operated as a supersedeas of the process in the hands of the sheriff and an injunction against all other proceedings than such as might thereupon be had by authority of the bankruptcy court. Jones v. Leach [Case No. 7,475]. A sheriff was restrained from selling goods under execution by the same judge, in Pennington v. Sale [Id. 10,939].

After judgment in a state court, execution, levy and advertisement for sale, the sheriff was restrained. In re Bernstein [Case No. 1,350]. The jurisdiction of a district court of the United States is superior and exclusive in all matters arising under the statute, and extends to a suspension of proceedings taken for the purpose of subjecting portions of the estate surrendered to a sale under state process. Until a sale is made a bankrupt is not divested of his interest in the property under seizure. In re Barrow [Id. 1,057]. A preliminary injunction was issued restraining the plaintiff in an execution upon a judgment confessed in a state court, and he moved to dissolve it. The question was argued before two judges, Grier and Cadwalader, and the jurisdiction maintained, the court refusing to dissolve the injunction. Irving v. Hughes [Id. 7,076]. Where judgments were rendered after the bankruptcy, Judge Deady held the jurisdiction to restrain the enforcement of the judgments was undoubted. In re Wallace [Id. 17,094]. Parties proceeding, after the bankruptcy, to foreclose a mortgage on the property of the bankrupt, in the state court, were enjoined. In re Kerosene Oil Co. [Id. 7,725]. A landlord was enjoined from distraining the bankrupt's property for rent. Brock v. Terrell [Id. 1,914]. In a case where the bankrupt himself filed a petition to restrain certain persons, who had obtained judgments against him prior to the filing of his petition, from proceeding by execution, Judge Giles, of the Maryland district, in answer to an objection that the district court had no jurisdiction, but that the proceeding

must be by bill and in the circuit court, said: "I am clearly of the opinion that the petition was properly filed in this court, and that this court has, by virtue of the 1st section of the bankrupt act, full and adequate jurisdiction over all matters relating to the settlement of the bankrupt's estate, either at law or in equity, by way of petition or bill; and that whenever the relief sought is necessary to the protection of the general creditors, such relief will be granted;" but as in the case before him there was no suggestion of fraud, and the judgments were admitted to be valid liens, he held that the jurisdiction of the bankruptcy courts was not exclusive, and permitted the judgment creditors to proceed in the state court. In re Bowie [Id. 1,728]. Upon the application of parties interested, the district court has jurisdiction to ascertain and liquidate a judgment lien, and while so doing to enjoin the judgment creditor from enforcing the same by execution out of the state court. In re Fuller [Id. 5,148]. If creditors who assert a claim against the bankrupt are not barred by the discharge, are allowed to commence suit in the state court for the purpose of saving the statute of limitations or securing testimony, the suit, after this object is attained, can be stayed to await the decision of the question of the debtor's discharge. In re Ghirardelli [Id. 5,376]. After the bankruptcy, creditors of the bankrupt, having a lien by mortgage, were proceeding to foreclose in a territorial court. The supreme court held, that all the property, choses in action, effects, interests and equities of the bankrupt must be brought into the bankruptcy court for settlement and distribution, and enjoined the creditors from proceeding in the foreclosure suit. In re Snedaker, 3 N. B. R. 155. Judgment was obtained in the state court, execution levied and property advertised for sale before the filing of the petition in bankruptcy. The sheriff was restrained from proceeding with the sale. Beattie v. Gardner [Case No. 1,195]. Under the law of 1841 an injunction was ordered against the assignee, appointed under the state laws, to stop his interference with the property of the bankrupt, and also to prevent certain creditors from proceeding with an execution. Ex parte Eames [Case No. 4,237].

For an instructive statement of the nature and extent of the equitable jurisdiction of courts of bankruptcy, see Ex parte Foster [Case No. 4,960].

In Re Campbell [Case No. 2,349], after property had been sold and the proceeds were in the hands of the sheriff, an injunction to restrain the state courts and their officers from proceeding, for the purpose of bringing the proceeds of the sale into the bankruptcy courts for distribution, was refused. Judge McCandless based his refusal upon the ground that the courts of the United States have no power to enjoin proceedings in the state courts, either directly or by restraining the

officers of such courts, or parties litigant therein.

This is the only opinion, so far as I can discover, directly denying this jurisdiction.

Upon my own convictions as to the proper construction of the bankrupt act, and upon the weight of authority, I hold that the court had jurisdiction to issue the writ. The prayer of the petition is therefore denied with costs.

The decision of the district court in this case was affirmed by the circuit court, on petition for review in the following opinion:

FIELD, Circuit Justice. When counsel closed their argument on the petition of Vansickle, for a review of the order of the district judge, I had no doubt of the correctness of that order, but I thought the case was one of sufficient importance to justify a written opinion, giving at length the views of the court upon the questions raised. I, therefore, took the papers and reserved my decision. Since then, I have read with care the opinion delivered by the district judge, when the matter was before him on the application of the petitioner to dissolve the injunction, and I find that it covers every question in the case, and presents the law in a very clear and satisfactory manner. It renders any opinion from me entirely unnecessary. I could not add to it nor improve it. I concur both in its reasoning and conclusion. Petition denied.